**Donovan Jack Richard BLISSETT,**
**Plaintiff–Appellee,**

v.

**Thomas A. COUGHLIN, III; Charles Hernandez; Harold J. Smith, Supt.; James E. Cochrane, D.S.S.; Capt. R. McCellane; Sgt. J.R. Rafferty; Officers Ronald G. Squires; John Doe Watson, also known as Cadillac; D. Bates; John Doe and Francis Mills; and Dr. Downs; R. Magee, P.A.; A. Wolcott, R.N.; Medical Personnel, each individually and in their official capacities, Defendants,**

**Sgt. David Smith; Sgt. William Bowen; Officers Robert J. Clark; Edwin F. Helak and Howard Offhaus, Defendants–Appellants.**

No. 1150, Docket 94–2527.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1995.

Decided Sept. 25, 1995.

Jane Simkin Smith, Millbrook, NY, for plaintiff-appellee.

John McConnell, Assistant Attorney General, State of New York (G. Oliver Koppell, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, of counsel), for defendants-appellants Sgt. David Smith, Sgt. William Bowen; Officers Robert J. Clark, Edwin F. Helak and Howard Offhaus.

Before: MINER and PARKER, Circuit Judges, and BAER, District Judge.*

PARKER, Circuit Judge:

This is an appeal from judgment following a jury trial and verdict, entered on February 22, 1993 by the Honorable Alfredo Marquez (U.S.D.C.Ariz.), sitting by designation in the Western District of New York. Donovan Jack Richard Blissett, an inmate at the Attica Correctional Facility, filed a *pro se* civil rights action under 42 U.S.C. § 1983 (1988) against a number of New York State Department of Correctional Services (DOCS) officials and employees, on September 14, 1984. Blissett's Complaint charged a variety of constitutional claims arising from an alleged assault perpetrated upon Blissett by several Attica prison guards, and his subsequent confinement to a Special Housing Unit (SHU) cell. Blissett was assigned an attorney and was represented by counsel throughout the pretrial proceedings and trial. Defendants mounted a unified defense and all of the defendants were represented by counsel from the Office of the Attorney General of the State of New York.

Blissett's original Complaint was twice amended and his claims winnowed during the subsequent eight years leading up to trial. In June 1992, four months prior to trial, both parties filed pretrial memoranda outlining their positions as to the remaining disputed issues of law and fact to be tried before a jury. These memoranda and the proposed jury instructions submitted by both parties establish that three claims, each arising under the Eighth Amendment, remained for trial against eleven defendants.

Count I alleged that, on June 28, 1983, six defendants—Sergeants David Smith and William Bowen, and Corrections Officers Robert J. Clark, Edwin F. Helak, Ronald G. Squires and Howard Offhaus—used unnecessary force upon Blissett. Count II alleged that nine defendants—the six defendants charged in Count I, as well as Corrections Officer David Bates, Attica's Deputy Superintendent of Security James Cochrane, and Attica's

Superintendent Harold Smith—were all liable for subjecting Blissett to unconstitutional conditions of confinement in an SHU cell.

Count III alleged that Dr. Fredrick Downs and Physician's Assistant Robert McGee, medical personnel with Attica's prison infirmary, showed deliberate indifference to Blissett's serious medical needs resulting from the alleged assaults.

The only witness Blissett presented at trial was himself. Blissett's testimony was substantially as follows: On June 28, 1983, Blissett was subjected to a routine random contraband search while proceeding with other inmates to the recreation yard following dinner. During this search, Officer Clark accused Blissett of dropping a steel "shank," a homemade knife, in an effort to avoid its detection. Officer Clark, Officer Squires and Sergeant David Smith then escorted Blissett to a room beyond the view of the other inmates. There, following a strip search, Sergeant Smith struck Blissett and accused him of planning to stab a corrections officer. These guards then handcuffed Blissett's hands behind him, so tightly as to cut off the blood circulation to his hands. Sergeant Smith continued to slap and punch Blissett. Officer Clark used his baton to strike Blissett on the head and spear him in the back. Officer Clark placed the baton through the handcuffs and between Blissett's legs, pressing the baton downwards against the handcuffs and prying upwards against Blissett's groin.

Sergeant Smith, Officer Clark, and an unidentified officer then escorted Blissett to the SHU cell area, striking and kicking him along the way. There, Blissett was turned over to Sergeant Bowen and Officers Offhaus, Helak, and Barry Watson. Blissett was assaulted a second time by these officers as well as Officer Clark and the unidentified officer. During this assault, Blissett fell to the floor, still handcuffed, where several officers kicked him. Sergeant Bowen and Officer Watson lifted Blissett from the floor and pressed his face against a wall, again accus-

---

* The Honorable Harold Baer, Jr., District Judge, United States District Court for the Southern District of New York, sitting by designation.

ing Blissett of planning to stab a corrections officer.

Blissett was strip searched a second time after which he remained naked and handcuffed. After this search, Sergeant Bowen grasped Blissett's throat, squeezing it while threatening to kill Blissett if he attempted to report the assaults. Blissett testified that he was unable to breathe during these threats and subsequently fell unconscious. After Blissett regained consciousness the assault ceased.

Blissett was escorted handcuffed, naked, and bleeding from the mouth, to an SHU cell designed to house inmates who were considered suicide threats. These "mental observation" cells have no movable furnishings, no interior source of illumination, and thick plexiglass covering the bars, thus limiting air circulation. Blissett testified that, at the time he was placed in this cell, the walls, mattress, sink, and floor were smeared with feces. Later that evening Blissett was issued a shirt, shorts, underwear, and sheets, all of which also smelled of feces. Blissett testified that he remained in this cell for eight days, at which time he was transferred to a conventional SHU disciplinary cell.

According to Blissett's testimony, he was seen by a nurse from the prison infirmary as he was being escorted to the SHU cell. Sergeant Bowen intervened in their conversation and the nurse departed. Blissett repeatedly requested medical attention during the night, but no medical personnel visited him until the following day. Blissett testified that he was visited by Defendants Downs and McGee on several occasions thereafter, but that they were entirely unresponsive to his complaints.

All of the defendants testified in their own defense. They unanimously maintained that they did not witness, nor were they aware of, any of the constitutional violations alleged by Blissett, much less any assault or altercation. Defendants moved for judgment as a matter of law on all counts and for all defendants at the close of both Blissett's case-in-chief and the close of all evidence. The district court granted the motion with respect to Defendants Bates, Cochrane, and Harold Smith on all counts; and to Sergeant Smith, Officer Clark and Officer Squires with regard to the conditions of confinement claim. The court denied the motion as to all other claims and defendants.

Neither party raised any objections to the jury instructions. A verdict form with special interrogatories was submitted to the jury on October 8, 1992 and the jury returned its verdict the same day. With regard to Blissett's unnecessary force claim (Count I), the jury returned a verdict against Sergeants Bowen and Smith and Officer Clark, and in favor of Officers Helak, Squires, and Offhaus. The jury awarded $75,000 in compensatory damages and punitive damages of $5,000 against Sergeant Bowen, and $10,000 each against the other five defendants, including Helak, Squires, and Offhaus against whom the jury had found no underlying liability. The punitive damages against the latter three were subsequently dismissed by stipulation of the parties.

As to Count II, concerning the conditions of confinement in the SHU cell, the jury found against Sergeant Bowen and Officers Helak and Offhaus, the only remaining defendants on Count II. The jury did not award Blissett any compensatory damages; however, it awarded punitive damages of $10,000 against Sergeant Bowen, and $5,000 each against Officers Helak and Offhaus. The jury found for both defendants on Count III, the deliberate indifference to serious medical needs claim.

On March 4, 1993, Bowen, Smith, Offhaus, Helak, and Clark (collectively "Appellants") filed a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50; or, in the alternative, for a new trial pursuant to Fed. R.Civ.P. 59. In Appellants' motion for judgment as a matter of law, they argued that the jury verdict lacked a legally sufficient basis for awarding either compensatory or punitive damages. Appellants' motion for a new trial argued that the overall verdict was against the weight of the evidence, that the verdict was inconsistent and demonstrated juror confusion, and finally, that the damages award was so excessive as to shock the conscience. These motions were denied on August 16, 1994 and the court stayed execution of the judgment pending appeal.

Appellants raise four issues on appeal. First, they renew their argument that the jury verdict was confused, inconsistent, and against the weight of the evidence. Second, they single out the award of $75,000 in compensatory damages on the unnecessary force claim as excessive in light of the evidence presented regarding Blissett's injuries. Third, Appellants claim that the district court erred in failing to grant Appellants' motion for judgment as a matter of law, made at the close of evidence, concerning the conditions of confinement claim. Finally, Appellants now raise the argument that the district court erred in finding that Appellants waived any qualified immunity defense they might have had.

## Discussion

### *Motion for New Trial*

■ Appellants first contend that the district court erred in failing to grant Defendants' Motion for a New Trial because the jury verdict was confused, contradictory, and against the weight of the evidence. We review an appeal from a district court's denial of a motion for a new trial for abuse of discretion. *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 875 (2d Cir.1992).

As a threshold matter, Appellants do not assert that their case at trial was prejudiced by the district court in any way. There is no claim that crucial evidence was not permitted to go to the jury, or that their summation was improperly restricted. Indeed, the record shows that the Defendants were permitted wide latitude on cross-examination to outline the facts underlying Blissett's incarceration for a homicide and his prison disciplinary record.

■ Instead, Appellants first argue that the verdict was against the weight of the evidence; in essence, that the jury could not reasonably find Blissett's solo testimony more credible than the combined testimony of the several defendants. The district court rejected this argument in denying the motion for a new trial. A district court order denying a motion for a new trial on the grounds that a verdict is against the weight of the evidence is not reviewable in this Circuit.

*Dunlap–McCuller v. Riese Organization,* 980 F.2d 153, 157 (2d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993).

■ Appellants further argue that there are three glaring legal inconsistencies in the jury answers to the special interrogatories which render that verdict a miscarriage of justice necessitating a remand for a new trial. As to Count I, Appellants contend that there is a clear contradiction between the jury finding only three defendants liable for using excessive force, but assessing punitive damages against all six.

When a claim is made that a jury's answers to special interrogatories are inconsistent, our responsibility as a reviewing court is to adopt a view of the case, if there is one, that resolves any seeming inconsistency.

*Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319, 325 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). It is fundamental that damages may not be assessed against one who has not been found liable. 22 *Am.Jur.*2d, Damages § 4 (1988). The parties correctly stipulated to removing the award of punitive damages with regard to the three officers for whom the jury had not found underlying liability.

Nevertheless, the jury's error in assessing punitive damages against the non-liable officers does not rise to a magnitude which, in itself, would render the entire jury verdict invalid. On the contrary, a careful review of the district court's instructions to the jury regarding punitive damages suggests that the jury may have merely misinterpreted an ambiguous passage within those instructions. The court instructed the jury that,

[i]f you award the plaintiff actual damages then you may also make him a separate and additional award of exemplary or punitive damages. *You may also make an award of punitive damages even though you find that the plaintiff has failed to establish actual damages.* Punitive damages are awarded in the discretion of the jury to punish a defendant for extreme or outrageous conduct or to deter *or prevent*

*a defendant and others like him from committing such conduct in the future.*

(Emphasis added).

A jury might easily interpret this instruction to permit an award of punitive damages against officers who did not actually participate in the assaults against Blissett, but rather stood by without intervening to protect Blissett, or acquiesced in the apparent cover-up which followed the assaults. Viewed in this light, the jury's verdict with regard to this claim, while legally erroneous, does not discredit the entire verdict.

The jury instruction regarding punitive damages also undermines Appellants' assertion that the verdict awarding punitive damages for Blissett's conditions of confinement claim is contradictory because the jury did not find Blissett had established actual damages on that claim. The jury instruction quoted above explicitly permits punitive damages where Blissett had failed to show actual damages.

■ Finally, Appellants argue that there is a contradiction between the jury's verdict against Blissett on the deliberate indifference to serious medical needs claim and its finding that Blissett nevertheless suffered injuries compensable in the amount of $75,000. Again, the jury instructions themselves clearly permit such a finding. The term "serious" was added to the jury instruction concerning the deliberate indifference to medical needs claim at the urging of defense counsel. The jury was thus instructed to find for Blissett only if he had "serious medical needs" which were ignored by Attica medical personnel. The court further instructed the jury that "[s]erious medical needs are those which produce death, degeneration or extreme pain, are life-threatening or are fast-degenerating." There is simply no contradiction between finding that Blissett suffered compensable injuries, but that those injuries were not sufficiently serious to establish his claim of deliberate indifference to serious medical needs.

For these reasons, we see no basis for disturbing the jury's verdict as either so confused or so contradictory as to constitute a miscarriage of justice.

### Excessive Damages

■ Appellants next argue that Blissett failed to offer sufficient evidence upon which the jury could base its award of compensatory damages.

It is well settled that calculation of damages is the province of the jury. We have held that "[t]he standard of appellate review of damage awards, whether compensatory or punitive, 'is whether the award is so high as to shock the judicial conscience and constitute a denial of justice.'"

*Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir. 1990) (quoting *O'Neill v. Krzeminski,* 839 F.2d 9, 13 (2d Cir.1988) (quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978))).

We accord considerable deference to the factual findings of both judge and jury regarding damages. *Id.* at 186. Although Blissett did not present independently substantiated evidence of any permanent injuries, Blissett testified to recurring problems with his right knee caused by the assaults. Blissett also testified at length as to his emotional state during and following the assaults. The jury was entitled to credit this testimony in calculating compensatory damages.

We may consider damages awards in similar cases in assessing the propriety of the amount of damages awarded here. *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 752–53 (2d Cir.1984). In light of other § 1983 damages awards in this Circuit, we find that the $75,000 awarded in this case is not excessive. *See, e.g., Ismail,* 899 F.2d at 184–85 (reversing remittitur and reinstating original jury verdict of $650,000 compensatory damages for police brutality claim); *Hughes v. Patrolmen's Benevolent Assoc. of City of New York, Inc.,* 850 F.2d 876, 883 (2d Cir.) ($225,000 in emotional distress damages for harassment not excessive even though no permanent harm resulted), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Blissett's testimony as to the physical and emotional injuries he suffered at the hands of Sergeant Bowen, Sergeant Smith and Officer Clark adequately supports the award of compensatory damages in this case.

*Conditions of Confinement Claim*

Appellants Bowen, Helak, and Offhaus next argue that the district court erred in not granting judgment as a matter of law on Blissett's conditions of confinement claim. Judgment as a matter of law should be granted only when:

> "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against [movant]."

*Bauer v. Raymark Indus., Inc.,* 849 F.2d 790, 792 (2d Cir.1988) (quoting *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688–89 (2d Cir.1983)). A motion for judgment as a matter of law must be denied,

> unless, viewed in the light most favorable to the nonmoving party, "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."

*Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers,* 34 F.3d 1148, 1154–55 (2d Cir.1994) (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)).

■ Appellants principally contend that, accepting Blissett's testimony as true, his allegations do not present conditions of confinement of a sufficient duration or nature to establish a violation of his Eighth Amendment rights. However, at the same time, Appellants acknowledge that there is no static test for Eighth Amendment conditions of confinement claims. *See Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398–99, 69 L.Ed.2d 59 (1981). The conditions themselves must be evaluated in light of contemporary standards of decency. *Id.* at 346, 101 S.Ct. at 2398–99.

■ Furthermore, Appellants do not fault the jury instruction delivered regarding this claim. The jury was instructed that Blissett must prove, by a preponderance of the evidence, that,

those conditions of confinement ... involved the wanton and unnecessary infliction of pain or [were] grossly disproportionate to the severity of the crime, warning and imprisonment.... Inflictions of pain that are without penological justification are considered unnecessary and wanton. Unquestioned and serious deprivations of basic human needs are considered cruel and unusual punishment. Conditions must be evaluated by contemporary standards of decency. Conditions that are restrictive or even harsh are not necessarily cruel and unusual punishment, but are to be expected to some degree as part of the penalty that criminal offenders must pay.

Under contemporary standards of decency, a jury could justifiably consider incarceration of a naked prisoner for several days in a dark, stuffy, feces-smeared mental observation cell, without any personal amenities, following a violent assault at the hands of corrections officers, to be an additional trauma inflicted without penological justification, and thus in violation of Blissett's Eighth Amendment right to be free from cruel and unusual conditions of confinement.

In addition, Appellants' demurrer fails to recognize that similar conditions of confinement have been repeatedly found to violate a prisoner's Eighth Amendment rights. *See Hoptowit v. Ray,* 682 F.2d 1237, 1257–58 (9th Cir.1982) ("The deprivation of nearly all fresh air and light, particularly when coupled with [lack of control over artificial illumination], creates an extreme hazard to the physical and mental well-being of the prisoner" in violation of Eighth Amendment); *Maxwell v. Mason,* 668 F.2d 361, 363 (8th Cir.1981) (deprivation of adequate clothing and bedding bearing "no relationship whatever to any security measure" amounts to "an unnecessary infliction of pain" to prisoner held in isolation and permitted only underwear and a mattress); *McCray v. Burrell,* 516 F.2d 357, 369 (4th Cir.1975) (confinement of nude prisoner in barren isolation cell without any personal articles for twenty-four hours), *cert. dismissed,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976).

## Qualified Immunity

For the first time on appeal, Appellants argue that the district court erred in failing *sua sponte* to dismiss, on qualified immunity grounds, the punitive damages award against Helak, Offhaus and Bowen on Blissett's conditions of confinement claim. Appellants contend that this error compounded an earlier error by the district court when it ruled that all of the defendants had waived any qualified immunity defense they might have had by failing to adequately plead that defense prior to trial. We will not now entertain Appellants' argument that the district court should have dismissed the punitive damages award *sua sponte* where Appellants failed either to seek such a dismissal at trial or to argue for dismissal in their post-trial motions. However, we will briefly address the district court's ruling that Appellants waived any qualified immunity defense prior to trial.

 In the context of the claims in this case, qualified immunity affords government officials a two-tier defense "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). First, qualified immunity may provide a defense from suit altogether where a defendant can show, in a motion for summary judgment, that "he could, as a matter of law, reasonably have believed [his conduct] was lawful." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987).

Where summary judgment is inappropriate, and the case proceeds to trial, the defense of qualified immunity may be presented to the jury or may be decided by the court in a motion for judgment as a matter of law. *Oliveira v. Mayer*, 23 F.3d 642, 649–50 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). However, because qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings so that the trial court can determine which claims, if any, may be disposed of by summary judgment, or, at least, which facts material to the qualified immunity defense must be presented to the jury to determine its applicability once the case has gone to trial. *See id.* (vacating judgment and remanding for a new jury trial on the issue of qualified immunity).

Here, Appellants raised a general immunity defense in their answer to Blissett's amended complaint, which they filed October 9, 1987.[1] Appellants did not raise the issue of qualified immunity during the subsequent five years of pre-trial proceedings. None of the Appellants sought summary judgment at any time prior to trial on the issue of qualified immunity. Appellants made no mention of a qualified immunity defense in their June 24, 1992 pretrial memorandum of law outlining the disputed issues of law and fact to be tried.[2] Nor did they offer proposed jury instructions concerning a qualified immunity defense.

On the morning of trial, after the jury had been selected and sworn, Judge Marquez *sua sponte* raised the question of whether there

---

1. Appellants' answer stated, in pertinent part:

 AS AND FOR A SECOND AFFIRMATIVE DEFENSE:
 56. Each and every answering defendant is immune from liability.
 AS AND FOR A THIRD AFFIRMATIVE DEFENSE:
 57. At all times herein relevant the answering defendants were employees of the New York State Department of Correctional Services, discharging their duties within the scope of their employment.
 58. Each and every act or failure to act on the part of the answering defendants resulted from their good faith and reasonable belief that those acts or failure (sic) to act would not

violate any of plaintiff's federally protected rights.

2. On the contrary, Appellants simply demurred to Blissett's conditions of confinement claim.

 It is equally true that it is possible that an inmate's confinement under certain conditions could raise (sic) to the level of a constitutional deprivation; however, in this case, defendants believe that even if the allegations made by plaintiff were true, those allegations do not state a claim cognizable under the 8th Amendment.
 Appellants further stated that they could not foresee any unusual issues of law or evidence which might arise at trial.

had been a qualified immunity defense asserted in the case. No record was made of the colloquy which followed. However, the record does reflect that, later that same day, immediately preceding opening statements, Judge Marquez revisited the issue. At that time he stated that he had reviewed the docket entries, found the affirmative defenses raised in Appellants' answer too general to assert a qualified immunity defense, and that he was unable to find a qualified immunity defense raised at any other time. Consequently, Judge Marquez ruled that the defense was "not going to be an issue in the case." Appellants failed to make a contemporaneous objection, or even offer argument, as to why the defense should be allowed. Instead, Appellants' counsel proceeded to inquire into an unrelated evidentiary matter.

Following opening statements by both parties, the beginning of Blissett's case-in-chief, and a lunch recess, Appellants' counsel asked the court to reconsider its earlier ruling. The district court then entertained oral argument on the matter, providing defense counsel ample opportunity to develop for the court how the qualified immunity defense would apply in this case.[3] The colloquy suggests that, while Appellants' counsel perhaps understood the general contours of the qualified immunity defense, he did not argue that a qualified immunity defense applied in this case, but rather simply that Blissett received "all the things to which he was entitled at all times." Appellants never articulated a qualified immunity defense distinct from their contention—the heart of their defense throughout these proceedings—that no constitutional violation occurred. Whether this was a matter of strategy or mere inadvertence is of no consequence to our consideration. As the district court correctly pointed out at the conclusion of the colloquy, Appellants still "failed to raise it" apart from their defense on the merits. *See Buffington v. Baltimore County, Md.,* 913 F.2d 113, 120–22 (4th Cir.1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991).

The defendant bears the burden of pleading and proving the affirmative defense of qualified immunity. *Harlow v. Fitz-*

*gerald,* 457 U.S. 800, 815, 819, 102 S.Ct. 2727, 2736–37, 2738–39, 73 L.Ed.2d 396 (1982). Here, the qualified immunity defense was raised by the court *sua sponte* on the morning of trial. Later that day, Appellants were permitted a second opportunity to address qualified immunity despite their silence on the matter during the five years of pre-trial litigation following their amended answer. Consistent with their pretrial posture, Appellants made no further effort to establish a qualified immunity defense following the colloquy. They did not seek to amend their proposed jury instructions to incorporate that defense, nor raise qualified immunity in any of their motions for judgment as a matter of law either during trial or after the verdict. We find no error in the district court's ruling that the qualified immunity defense had been waived.

Affirmed.

## APPENDIX

### *Transcript of the Colloquy*

THE COURT: All right.

(Whereupon a luncheon recess was taken at 12:30 p.m..)

MR. CREAM: Your Honor, before we proceed this afternoon I'd like to request that the Court reconsider its earlier ruling with respect to the good faith defense. Your Honor had indicated in its ruling that the good faith defense was not raised in the answer to the amended complaint.

THE COURT: Let me save you some time. Good faith is not a defense anymore.

MR. CREAM: Your Honor, the good faith defense and the qualified immunity defense are in this practice used synonymously. The good faith defense or the qualified immunity defenses as far as I have been able to look at the cases over the period of time is referred to in the shorthand way—in the shorthand manner in the same way. Your Honor is correct when you say that the good faith defense, that is, the defendants' belief that it was okay to violate constitutional-

---

**3.** A transcript of the colloquy is attached as an appendix to this opinion.

ly protected rights, is certainly not a defense, but it is a defense for the defendants to plead and for the jury to believe that the defendants did not anticipate that their actions would violate the constitutionally protected rights of the defendants—of the plaintiff, I am sorry, and that is how in our practice, your Honor, the affirmative good faith or qualified immunity defense has been pleaded. Moreover, the amended answer, having been filed in 1987, those were the—that was the way in which the defense was pleaded, at least by our office.

THE COURT: Well, you didn't cover it as an issue in the stipulation, you didn't cover it in your pretrial memorandum, and I had made a list of these things, which I addressed this morning. You didn't cover it in your proposed instructions to the jury other than the language that—as far as mental state is concerned, that they believed or a reasonable person would have believed, language to that effect, that is in the instructions.

MR. CREAM: That is right, Judge, and the qualified immunity defense, as I understand it, is that there was no prevailing or case law, no statute that clearly and succinctly put the defendants on notice that certain conduct would violate the constitutionally protected rights of the plaintiff. That is the essence of the good faith defense or as it's now come to be known, the qualified immunity defense.

THE COURT: Well, wasn't the law real well established at the time that excessive use of force and deliberative indifference to serious medical needs, and as far as conditions of confinement also being— could be the subject of a violation of somebody's constitutional rights? There wasn't any question at that time.

MR. CREAM: That is right, Judge, but what behavior, what actions, what conditions constituted that violation was certainly not well decided, and to this date as far as the conditions of confinement are concerned at the very least are still not in

defendants' view a matter of well-established precedent. In this case we have plaintiff saying that his cell was dirty and that he was without certain personal property. Now, the proof may establish that or may establish otherwise. Defendants will attempt to convince the jury that the facts are that the plaintiff had all of the things to which he was entitled at all times.

THE COURT: I don't think—I don't think you've raised it.