**Jason B. NICHOLAS, Plaintiff,**

v.

**Edward TUCKER, Superintendent, et al., Defendants.**

**No. 95 Civ. 9705 (LAK).**

United States District Court, S.D. New York.

March 14, 2000.

Jason B. Nicholas, plaintiff pro se.

Elizabeth A. Forman, Assistant Attorney General, Eliot Spitzer, Attorney General of the State of New York, New York City, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff, a prison inmate who claims that he was improperly subjected to prison discipline in violation of his federal constitutional rights, objects to the report and recommendation of Magistrate Judge Ellis, dated January 27, 2000, which recommended that defendants' motion for summary judgment be granted and plaintiff's cross-motion for partial summary judgment be denied.

### Facts

The facts material to this disposition of these motions may be stated briefly.

At all relevant times, plaintiff was an inmate at New York's Woodbourne Correctional Facility in consequence of his conviction for manslaughter in the first degree and possession of a dangerous weapon. He is Caucasian and professes the Muslim religion.

Plaintiff's regular work assignment at Woodbourne was in the business office in the administration building, which was outside the secured area of the prison. On each day on which plaintiff was scheduled to report to work, he presented himself to Correction Officer Clayton Cook, a defendant here, was pat frisked, and then proceeded to the office where Cook, among others, was responsible for supervising plaintiff during his employment. The office contained State-owned computers, and plaintiff claims that he had used those computers for personal work without objection from defendants.[1]

At some point, plaintiff began wearing a kufi, headgear associated with the profession of the Muslim religion. On September 10, 1995, he wore the kufi to his work assignment for the first time.[2] When he presented himself to Officer Cook on September 13, 1995, Cook questioned his right to wear the kufi to his job and brought plaintiff to Deputy Superintendent Budd for a determination.[3] According to plaintiff's account, Budd told Cook to "take care of it." [4]

On September 14, 1995, plaintiff reported to Cook for the pat frisk prior to going to work in the administration building. During the pat frisk, Cook discovered that plaintiff was carrying personal legal papers. He told plaintiff that such papers were not allowed in the business office and to remove them by the end of the day.[5] Later that day, Cook observed plaintiff entering his personal legal work on one of the computers in the office and saw other legal documents unrelated to plaintiff's work assignment at his desk.[6] He then prepared an Inmate Misbehavior Report charging plaintiff, *inter alia*, with misuse of state property in violation of New York State Department of Correctional Services ("DOCS") Rule 116.10 by his use of State-owned computers to do his personal work. Plaintiff was placed in keeplock on the same day and subjected to a Tier III disciplinary hearing at which he was convicted of the Rule 116.10 violation and, as modified on subsequent administrative appeal, sentenced to 60 days in keeplock with loss of certain privileges.

Insofar as is relevant here, plaintiff claims that he was disciplined in violation of his right to due process of law in that (a) DOCS Rule 116.10 is unconstitutionally vague as applied to this case, (b) he was not given sufficient notice of the disciplinary charge against him, and (c) the hearing officer improperly prejudged the case against him. In addition, plaintiff claims that the disciplinary proceeding was brought against him in retaliation for his wearing a kufi to work and/or because the work he was doing was legal in nature, that he was confined prior to adjudication of the disciplinary complaint because he attempted to have the legal work that was seized from him returned, and that the penalty imposed upon him was increased because he defended vigorously against the charges.

*The Due Process Claims*

The Magistrate Judge found the existence of genuine issues of fact as to whether plaintiff had a protected liberty interest, and there is no need to revisit that issue. The question is whether he correctly recommended the entry of judgment for the defendants on the merits of the due process claims.

*Vagueness*

The charge of which plaintiff was found guilty was violation of DOCS Rule 116.10, which states that "inmates shall not lose, destroy, steal, misuse, damage or waste any type of State property." The basis for the charge was plaintiff's use of a comput-

---

1. Docket item 48, ¶ 19.

2. Tucker Aff, Ex. A, at 35–37.

3. *Id.* at 37–38.

4. Docket item 48, ¶ 19.

5. Def. 56.1 St. ¶ 10.

6. *Id.* ¶ 11.

er in the administration building at Woodbourne Correctional Facility, to which he had proper access as part of his prison work assignment, to do personal legal work.

■ As the Magistrate Judge concluded, this Circuit employs a two-pronged test in determining whether a statute or rule is unconstitutionally vague as applied. The court first must determine whether the statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and then whether the law affords sufficiently explicit standards for those who must apply it.[7]

■ Plaintiff was afforded access to the State-owned computer in the administration building for the purpose of performing his work assignment. A person of ordinary intelligence had a reasonable opportunity to know that the use of that computer to prepare papers for his personal litigations was inappropriate. Nor would anyone charged with applying Rule 116.10 be afforded excessive discretion in these circumstances. Rule 116.10 as applied in this case therefore satisfies both prongs of the governing standard.[8]

### Notice of Charge

Plaintiff complains next that the misbehavior report gave him notice of a charge of misuse of state property but that he was found guilty only of causing property damage or loss, a charge of which he had no advance notice.[9] In fact, however, the inmate misbehavior report with which plaintiff was served in advance of the hearing[10] clearly explained the conduct with which plaintiff was charged—the use of a State-owned computer for his personal work—

7. See Chatin v. Coombe, 186 F.3d 82, 87 (2d Cir.1999).

8. The Court reaches this conclusion irrespective of whether Facility Directive 2810 or the corresponding DOCS directive was known by or available to plaintiff or posted in an area accessible to him.

9. Pl.Mem. at 30.

and that this conduct allegedly violated Rule 116.10. The hearing officer's determination clearly demonstrates that this was the basis of the Rule 116.10 conviction.[11] Moreover, the only charge sustained through the appellate process was that of misuse of state property in violation of Rule 116.10.[12]

The only basis for plaintiff's contrary contention is the fact that a computer summary of his disciplinary record refers to this incident as "116.10 LOSS/DAMAGE PROP."[13] This is insufficient to raise a genuine issue of material fact, as the record clearly establishes the nature of the charge and the basis for the conviction. The inappropriate use of the State-owned computer in violation of Rule 116.10 readily could be summarized in shorthand as involving a property loss—the State's loss of the exclusive use of its own equipment for its own purposes. The offense is quite analogous to theft of services and other similar property crimes.

### Alleged Prejudgment

Plaintiff claims that the hearing officer prejudged the case against him because the hearing officer's disposition sheet states that the date and time of the hearing was September 20 at 10:57 a.m. although no testimony was taken until a subsequent date. This, plaintiff argues, shows that the hearing officer decided that he was guilty before hearing the evidence.

This contention is groundless for the reasons stated by the Magistrate Judge— essentially, that the date on the form in fact was the date on which the hearing first convened and that there is no competent evidence that the finding of guilt was

10. Tucker Aff.Ex. A, at 3.

11. Id. at 4.

12. Selsky 1995 Aff. ¶¶ 4–6.

13. Pl.Aff. in Reply Ex. 38.

placed on the form before the hearing was concluded.

*Retaliation*

■ "In order to sustain a retaliation claim, the plaintiff must demonstrate that he engaged in constitutionally protected conduct and that the 'protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.' [citation omitted] Once the plaintiff carries his initial burden, 'the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff "even in the absence of the protected conduct." ' " [14]

■ There is no evidence, as distinguished from conclusory assertion, that plaintiff was placed in administrative segregation pending the hearing on the misbehavior report because he tried to get his legal papers back or that the hearing officer imposed a stiffer sentence because plaintiff defended himself vigorously against the charges. In consequence, those contentions fail at the outset even on the assumption that the conduct in which plaintiff engaged was constitutionally protected, as doubtless was true of his defense to the charges. His other retaliation claims, however, are more troublesome.

Defendants do not dispute that plaintiff's wearing of the kufi and his preparation of legal papers were constitutionally protected activities. Moreover, in each case, there is at least some evidence to support the contention that the charges were borne of animus against the constitutionally protected activity. Cook's questioning of plaintiff's wearing of the kufi may have been the product of appropriate motives, but its temporal proximity to the misbehavior report—particularly coupled with the contention that Deputy Superintendent Budd told Cook to "take care of"

the problem of plaintiff's headgear and the evidence that plaintiff had openly done his personal work on the State computers for some time without objection—suggests the possibility of a retaliatory motive. So too does the fact that, allegedly, no objection was raised to plaintiff's use of the computer for personal work prior to the discovery that he was preparing legal papers on it. The question therefore becomes whether defendants are entitled to judgment as a matter of law even if Cook was motivated in whole or in part by constitutionally proscribed motives.

Defendants argue that plaintiff's admission that he used the State-owned computer to do personal work, a violation of Rule 116.10, is fatal to the retaliation claims on the theory that there is no liability if the allegedly retaliatory actions could have been taken on a proper basis. They rely on *Lowrance v. Achtyl,*[15] which bears some similarity to this case. The Court there assumed *arguendo* that the inmate had established that a retaliatory motive had played a substantial part in the correction officer's decision to bring charges, but nevertheless affirmed the dismissal of the inmate's complaint based on its conclusion that the inmate's admission of the misbehavior at issue readily permitted the inference that the disciplinary charges would have been brought even in the absence of improper motives.[16]

*Lowrance* supports defendants' position. If it stood alone, the Court would be obliged to grant summary judgment on the retaliation claims based on its authority. But defendants ignore the fact that *Lowrance* is not the Circuit's last word on this subject.

The first step in the Circuit's retreat from *Lowrance* perhaps was *Rivera v.*

---

**14.** *Hynes v. Squillace,* 143 F.3d 653, 657 (2d Cir.1998) (quoting *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996)) (in turn quoting *Mt. Healthy City Schl. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

**15.** 20 F.3d 529 (2d Cir.1994).

**16.** *Id.* at 535.

*Senkowski.*[17] The plaintiff there claimed, among other things, that he had been reclassified adversely in retaliation for the filing of grievances. The Circuit recognized the presumption of proper purpose created by *Lowrance.* In remanding to the district court, however, it added "some guidance to the district court as to the applicability of *Lowrance....* "[18] A unanimous panel wrote:

"The district court should recognize that the presumption of proper purpose accorded the acts of prison officials is particularly strong when officials act pursuant to a duty imposed by a prison regulation which is observed in practice and is essential to prison discipline and order. In such a case, the inmate's claims must render it unlikely that the prison official would have performed the act absent a retaliatory purpose. We express no opinion on whether Rivera's claims of retaliation suffice."[19]

The next relevant case is *Graham v. Henderson.*[20] The plaintiff in that case claimed that he had been subjected to disciplinary charges in retaliation for filing a grievance against prison officials. In reversing the dismissal of the suit on a motion for summary judgment, the Circuit simply focused on the fact that the plaintiff's claim of retaliation was not conclusory and that there was evidence from which the trier of fact reasonably might have concluded that retaliatory animus in fact motivated the defendants.[21]

The most recent decision on this subject is *Hynes v. Squillace.*[22] The plaintiff there was disciplined for, *inter alia,* refusing to comply with a direct order and making a threat, conduct which he admitted. He claimed that the discipline was imposed to retaliate for his having complained to the superintendent about one of the correction officers. The Circuit affirmed the district court's dismissal of the action on summary judgment in reliance on *Lowrance.* Nevertheless, it cited *Rivera* with approval.

What then is to be made of this line of authority? There is little doubt, as the Circuit said in *Lowrance,* "that prison officials have broad administrative and discretionary authority over the institutions they manage."[23] Courts must afford substantial deference to judgments made in often ambiguous circumstances. Moreover, we must be ever mindful that claims of retaliation are readily made in the highly regimented environment of penal institutions and that the ability of inmates to haul prison officials into court on the thinnest of pretexts itself would undermine discipline. Nevertheless, deference does not require turning a blind eye to violations of the Constitution. As *Rivera* made clear, the degree of deference depends upon the circumstances. When prison officials act pursuant to a duty clearly imposed upon them, where the rule they invoke is enforced regularly, and where its enforcement is essential to the maintenance of order and discipline, the deference is at its maximum. Where the action is discretionary, where the rule is not uniformly enforced, and where the rule is not directly related to order and discipline, the degree of deference that is appropriate is correspondingly reduced.

In this case, the Court assumes that Officer Cook brought the misbehavior report pursuant to a specific rule, as there was a facility directive that forbad the use of State-owned computers by inmates for personal projects. But there is substantial evidence that prison officials often did not enforce the directive. It is not intuitively obvious, and there certainly is no evidence,

**17.** 62 F.3d 80 (2d Cir.1995).

**18.** *Id.* at 86.

**19.** *Id.*

**20.** 89 F.3d 75 (2d Cir.1996).

**21.** *Id.* at 80–81.

**22.** 143 F.3d 653.

**23.** *Lowrance,* 20 F.3d at 535.

that the directive was essential or even particularly relevant to safety, order and discipline. In consequence, the Court holds that the defendants have failed to establish as a matter of law that plaintiff would have been disciplined even in the absence of any retaliatory motive, although of course they might prevail on this issue with the trier of fact. In consequence, this aspect of the retaliation claim is sufficient to withstand defendants' motion for summary judgment absent some other ground for dismissal.

*Other Issues*

The preceding conclusion requires the Court to reach alleged grounds for dismissal not considered by the Magistrate Judge.

██ To begin with, the complaint, insofar as it is brought against DOCS (s/h/a New York State Department of Correctional Facility) must be dismissed. DOCS is an agency of the State, and the State is immune from a damages suit such as this by virtue of the Eleventh Amendment.[24]

The only defendant charged with having acted out of a retaliatory motive in the one respect that withstands defendants' motion

is Correction Officer Cook. Given the lack of personal involvement by the other defendants in the activity complained of, the complaint must be dismissed as to all but Officer Cook.[25] The remaining question is whether the retaliation claim against Officer Cook, as defendants argue, must be dismissed on the ground of qualified immunity.

██ "Government officials are protected from suits against them in their individual capacity for money damages where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "[26] "A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " "[27]

██ Summary judgment on the basis of qualified immunity is appropriate only where the court can find, as a matter of law, that the defendant reasonably believed his conduct was lawful.[28] Where there are disputed issues of fact relevant to the qualified immunity defense, summary judgment is not appropriate.[29] In

---

24. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Supreme Court has held also that section 1983 does not abrogate a state's Eleventh Amendment immunity. *Id.* at 169 n. 17, 105 S.Ct. 3099 (citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

25. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997) ("A supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation."); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted).

26. *Diamondstone v. Macaluso*, 148 F.3d 113, 126 (2d Cir.1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

27. *Id.* (quoting *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir.1998) and *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

28. *See Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir.1995).

29. *See Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (In order to overcome qualified immunity defense at summary judgment, plaintiff's allegations, if accepted as true, must state a claim for violation of a clearly established constitutional right.); *Al-Jundi v. Mancusi*, 926 F.2d 235, 237 (2d Cir.1991) ("Qualified immunity is available on motion for summary judgment if it appears, from undisputed facts, that an officer's conduct did not violate constitutional rights that were clearly established at time of

such case, the defense of qualified immunity may be presented at trial.[30]

Plaintiff alleges that Officer Cook acted solely out of a retaliatory motive.[31] This allegation is not merely conclusory, but is supported by at least some evidence.[32] If proved, retaliation on the basis of plaintiff's preparation of legal papers would violate plaintiff's constitutional rights as clearly established at the time.[33] Further, it would have been objectively unreasonable for Officer Cook to have believed that he properly brought the misbehavior report if his sole motive was retaliation for plaintiff's preparation of legal papers.

It is not quite as clear that retaliation for plaintiff's wearing of the kufi violated plaintiff's clearly established constitutional rights at the time of the incident. The Second Circuit in *Burgin v. Henderson*[34] held that a prison cannot restrict an inmate's wearing of religious headgear without an inquiry into the relative weights of the prison's interest in the restriction and the inmate's constitutional interest in wearing the headgear. But defendants have not addressed the implications of *Burgin* for this case or the broader question that it implicates. Hence, the Court cannot now say that retaliation for plain-

tiff's wearing of the kufi did not violate plaintiff's constitutional rights as clearly established at the time, although that issue remains open.

Defendants respond that Officer Cook's actions were motivated in whole or in part by legitimate disciplinary reasons rather than by illegitimate reasons alone.[35] This factual contention, however, is insufficient to prevail on a motion for summary judgment. In consequence, summary judgment the basis of qualified immunity is not appropriate.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted in all respects except as to plaintiff's claim against Officer Cook for retaliation based on plaintiff's wearing of the kufi and his preparation of legal papers. Plaintiff's cross-motion for partial summary judgment is denied.

SO ORDERED.

his actions...."). *See also McKelvie v. Cooper,* 190 F.3d 58, 63 (2d Cir.1999) (Issue of fact precludes legal conclusion as to whether police officers' conduct was "extreme and outrageous" and therefore precludes summary judgment on ground of qualified immunity.); *Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999) (Disputes of material fact regarding extent of force used and injuries suffered precludes summary judgment on defense of qualified immunity.); *Washington Square Post # 1212 Am. Legion v. Maduro,* 907 F.2d 1288, 1292 (2d Cir.1990) (Plaintiff's allegation that searched premises was not open to the public, although disputed by defendant, is assumed for purpose of motion for summary judgment based on qualified immunity.).

**30.** *See Blissett,* 66 F.3d at 538.

**31.** Am.Cpt. ¶ 78.

**32.** As discussed above, several facts support plaintiff's contention that Officer Cook's actions were retaliatory, including the temporal

proximity of the misbehavior report and Officer Cook's questioning of plaintiff about the kufi, the contention that Deputy Superintendent Budd told Cook to "take care of" the problem of plaintiff's headgear, and evidence that plaintiff had openly done his personal legal work on the state computers without objection. *See* Docket item 48, ¶¶ 4, 19–20; Docket item 55, ¶ 9; Tucker Aff., Ex. A, at 35–38.

**33.** *See Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991) (institution of an Article 78 lawsuit is first amendment protected activity); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (confiscation of prisoner's legal papers violates constitutional right of access to the courts).

**34.** 536 F.2d 501 (2d Cir.1976).

**35.** Def.Mem. at 33.