Ennis HIGHTOWER, Plaintiff,

v.

NASSAU COUNTY SHERIFF'S DE-PARTMENT, C.O. John Kennedy, C.O. Ronald Hartung, C.O. Matthew Anderson, C.O. John Lagormarsino, CPL. Gary McGuinness, Defendants.

No. 99 CV 2523(ADS).

United States District Court,
E.D. New York.

July 19, 2004.

Law Office of Anthony Ofodile, by Anthony Ofodile, Esq., of Counsel, Brooklyn, NY, for Plaintiff.

Friedman, Harfenist, Langer & Kraut, by Steven J. Harfenist, Esq., of Counsel, Charles Horn, Esq., Lake Success, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Ennis Hightower ("Hightower" or the "plaintiff") brought this Section 1983 action against the Nassau County Sheriff's Department and five correction officers (collectively, the "defendants"), alleging violation of his Eighth Amendment constitutional rights based on excessive force while he was a pre-trial detainee at the Nassau County Correctional Facility. In addition, the plaintiff also alleged causes of action under New York State law sounding in battery. The Section 1983 excessive force and battery claims involved two incidents which occurred on October 20, 1998; one at 10:00 a.m. and the other at 12:00 noon. In addition, the plaintiff alleged another battery claim, which occurred on November 30, 1998.

The jury returned a verdict in favor of the defendants on the October 20, 1998 10:00 a.m. incident as to both Section 1983 excessive force and battery. Also, the jury returned a verdict in favor of the defendants on the November 30, 1998 battery claim. However, the jury returned a verdict in favor of the plaintiff on his October 20, 1998, 12:00 noon, Section 1983 and battery claims against the defendants Correction Officers Matthew Anderson, John Lagormarsino and Gary McGuinness. In compensatory damages, the jury awarded the plaintiff the sum of $150,000 for his physical injuries and pain and suffering and the sum of $65,000 for his emotional distress to December 12, 2003, the date of the verdict. In addition, the jury awarded punitive damages against three of the correction officers in the total sum of $65,000. The monetary damages awarded by the jury was the total sum of $280,000.

The defendants have moved (1) to amend their answer pursuant to Rules 15(a) and 15(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") to include the affirmative defense of failure to exhaust administrative remedies, (2) for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) and 50(b) for failure to exhaust and (3) for a new trial pursuant to Fed.R.Civ.P. 59 on the ground the award for plaintiff's injuries and pain and suffering was excessive. On his part, the plaintiff has moved pursuant to 42 USC § 1988(b) and Fed.R.Civ.P. 54(d) for attorneys fees and costs.

## I. DISCUSSION

**A. The Defendants' Motion to Amend their Answer and for Judgment as a Matter of Law for Failure to Exhaust**

The defendants move to amend their answer pursuant to Fed.R.Civ.P. 15(a) and 15(b) to add the affirmative de-

fense of failure to exhaust administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The plaintiff opposes this amendment, asserting prejudice and that the defendants waived this affirmative defense due to delay.

"It is settled that grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). A defendant's failure to raise an affirmative defense does not automatically result in a waiver. *See Lamont v. Frank Soup Bowl, Inc.,* 99 CV 12482, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 20, 2000), 2000 U.S. Dist. LEXIS 18550, at *4.

■ Leave to amend is generally granted unless the amendment (1) has been unduly delayed; (2) is sought for dilatory purposes or is made in bad faith; (3) would cause undue prejudice on the opposing party; or (4) would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Absent bad faith or undue prejudice, amendment should not be denied on the basis of delay alone. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234–35 (2d Cir.1995).

■ To determine whether the opposing party would suffer undue prejudice, the Court considers whether leave to amend would: "(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Lamont,* 2000 WL 1877043, at *2, 2000 U.S. Dist. LEXIS 18550, at *5 (citing *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993)). The burden is on the plaintiff to establish that the amendment would be prejudicial. *Id.*

In arguing for an amendment to add the affirmative defense, the defendants contend that the plaintiff's excessive force claims are subject to the PLRA's exhaustion requirements and that his failure to exhaust mandates dismissal of the plaintiff's complaint. The PLRA imposes a mandatory exhaustion requirement on prisoners prior to commencing an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). However, as described by the Supreme Court in *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), at the time this action was commenced on May 3, 1999, the law in the Second Circuit was that the PLRA "governs only conditions affecting prisoners generally, not single incidents that immediately affect only particular prisoners, such as corrections officers' use of excessive force." *Nussle,* 534 U.S. at 520, 122 S.Ct. 983.

In the year 2002, the Supreme Court clarified the rule in *Porter v. Nussle,* stating that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. at 532, 122 S.Ct. 983. After the *Nussle* decision, courts in this Circuit have held that excessive force claims fit within the category of "inmate suits about prison life," and therefore must be preceded by the exhaustion of state administrative remedies that are available. *See McCoy v. Goord,* 255 F.Supp.2d 233, 246 (S.D.N.Y.2003).

■ In this Circuit, exhaustion under the PLRA is not jurisdictional, but rather, an affirmative defense that must be raised and proven by a defendant. *See Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). If a defendant fails to raise the defense, it is deemed waived. *See Travellers Int'l,*

*A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580 (2d Cir.1994). The plaintiff argues that the defendants' have waived the affirmative defense by failing to raise it sooner. The Court agrees.

When the defendants filed their answer, they did not raise the affirmative defense and were not required to do so because the PLRA did not, at the time, apply to excessive force claims. The law in the Circuit changed in February 2002, and this case was tried in December 2003. For a period of approximately 23 months, the defendants failed to move to amend their answer to add the affirmative defense. Nor did the defendants file a motion to dismiss or motion for summary judgment to dismiss the complaint on the basis of failure to exhaust under the PLRA. Instead, the defendants waited until the eleventh hour at the trial for leave to amend their answer.

■ The Court finds that granting the amendment would be prejudicial to the plaintiff. The defendants contend that the plaintiff testified at the trial that he could not remember whether he had filed a grievance under the procedure. The defendants further assert that, at the close of the evidence, the plaintiff stipulated that he never followed the required procedure but claimed that he formally exhausted his administrative remedies by filing a complaint with the Internal Affairs Unit of the Nassau County Sheriff's Department and with Deputy Sheriff Donahue of the Department.

■ Significantly, the Court notes that the failure to exhaust may be excused where

**(1) an inmate was led to believe by prison officials that his alleged incident was not a "grievance matter" and assured that his claims were otherwise investigated ..., (2) an inmate makes a "reasonable attempt" to exhaust his administrative reme-dies, especially where it is alleged that corrections officers failed to file or otherwise impeded or prevented his efforts,....**

*Williams v. United States, et al.,* No. 02 Civ. 6523, 2004 WL 906221, at \*6 (S.D.N.Y. Apr. 26, 2004), 2004 U.S. Dist. LEXIS 7291, at \*18–19 (citing *O'Connor v. Featherston,* No. 01 Civ. 3251, 2002 WL 818085, at \*1 (S.D.N.Y. Apr. 29, 2002), 2002 U.S. Dist. LEXIS 7570, at \*2). As aptly noted by one court, "prison officials cannot have it both ways—they cannot obstruct an inmate's pursuit of administrative exhaustion on the one hand and then claim the inmate did not properly exhaust these remedies on the other." *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y.2003).

According to Hightower, despite his request, he was never given a formal form to file a grievance. As a result, he filed a grievance with the Grievance Department of the jail on regular writing paper without using the proper forms. Even after he filed a grievance with the Grievance Department, the plaintiff still did not receive any written response. In another attempt, the plaintiff submitted a written complaint to the Nassau County Sheriff's Department. A Deputy Sheriff by the name of Donahue visited the plaintiff, but Hightower was uncertain whether his visit was a result of his grievance.

In an affidavit, the plaintiff's counsel states that, because of the defendants' failure to interpose the affirmative defense, the plaintiff made no request for production of any documents relating to the grievances filed by the plaintiff. The plaintiff's counsel also explains that he never discussed or researched the issue of exhaustion with Hightower because that issue was never raised. According to counsel, the amendment sought would be prejudicial to the plaintiff because additional discovery would be necessary to de-

termine "how Nassau County Jail administrated its administrative remedies, what happened in situations where plaintiff made numerous complaints of the same issues through different individuals and agencies within the County, and whether any hearings were conducted on plaintiff's numerous complaints." In essence, it appears the plaintiff is arguing that additional discovery would be needed to show that Hightower made a reasonable attempt to file a grievance but due to various failures by the defendants, he was prevented from following the formal grievance process.

■ The Court finds that the plaintiff has demonstrated that he would be deprived of the right to re-open discovery to determine whether the plaintiff was excused from exhausting his administrative remedies because the correctional institution failed to provide him with sufficient information about the grievance procedure or interfered with his ability to file a grievance. An amendment now would deprive the plaintiff of an indispensable right, which does constitute prejudice in the legal sense. Accordingly, due to the defendants' delay in filing their motion, an amendment now would cause undue prejudice to the plaintiff, and the defendants' motion for leave to amend the answer is denied. As such, the defendants' motion for judgment as a matter of law for failure to exhaust is also denied.

## B. The Defendants' Motion for a New Trial on Damages Pursuant to Fed. R.Civ.P. Rule 59

■ The defendants move for a new trial on damages with respect to the awards for physical injuries and emotional distress "unless the plaintiff accepts a remittitur in the amount of $85,000." Dft. Memorandum at p. 24.

■ The decision whether to grant a new trial following a jury trial under Rule 59 is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). "This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Textile Deliveries, Inc. v. Stagno,* 52 F.3d 46, 49 (2d Cir.1995). Even if substantial evidence exists to support the jury's verdict, a court has the power to grant a new trial under Rule 59. *See Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992).

■ In general, a motion for a new trial should not be granted unless the court is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 623 (2d Cir.2001). In determining whether the jury reached a "seriously erroneous" result, the district court "is free to weigh the evidence and 'need not view [the evidence] in the light most favorable to the verdict winner.'" *Farrior v. Waterford Bd. of Educ.,* 277 F.3d 633, 634 (2d Cir.2002) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 134 (2d Cir.1998)).

The defendants argue that, because the jury was presented jointly with both Hightower's Section 1983 claims and pendent state law claims for battery, the Court must determine excessiveness under both federal and state law. However, the plaintiff asserts that a review of excessiveness under state law is improper. The plaintiff's view is misplaced.

■ In cases where a jury awarded lump sum damages encompassing both federal and pendent state claims, excessiveness is measured under both federal and state law. *See Martinez v. Gayson,* No. 95 Civ. 3788, 1998 WL 564385, at *4-5

(E.D.N.Y. June 30, 1998), 1998 U.S. Dist. LEXIS 12281, at \*14 (citing *Mason v. City of New York,* 949 F.Supp. 1068, 1075 (S.D.N.Y.1996)). Here, the lump sum award is both for a violation of Federal Section 1983 and the state law claims for battery. Thus, the Court will review the award under both standards.

▮▮▮▮▮▮▮ Under federal law, an award will not be disturbed unless it is "so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990). In contrast, under New York law, a trial court reduces an award when it "deviates materially" from reasonable compensation as measured by awards in similar cases. N.Y. C.P.L.R. § 5501(c). The "deviates materially" standard is less deferential to a jury verdict than the "shock the conscience" standard because the state law standard "does not permit a reviewing court to sustain a damage award that is out of line with other awards for similar injuries, even if the amount [sic] the jury awarded was not shocking to the court's conscience." *Fowler v. New York Transit Auth.,* No. 96 Civ. 6796, 2001 WL 83228, at \*10 (S.D.N.Y. Jan. 22, 2001), 2001 U.S. Dist. LEXIS 762, at \*10 (citing *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 424–25, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)).

While no two cases are exactly alike, a comparison of other excessive force and battery cases is instructive to determine whether the award of $150,000 for Hightower's claims for physical injuries and pain and suffering and the award of $65,000 for emotional distress are so high as to "shock the judicial conscience." A review of comparable cases which address combined verdicts for physical injuries/pain and suffering and emotional distress damages show that, absent permanent physical injuries or serious psychological injuries, such

awards generally result in less than $100,000. *See Morales v. The City of New York,* No. 99 Civ. 10004, 2001 WL 8594, at \*8 (S.D.N.Y. Dec. 29, 2000), 2000 U.S. Dist. LEXIS 18711, at \*24.

In *DiSorbo v. Hoy,* 343 F.3d 172 (2d Cir.2003), the Second Circuit recently reduced an award of $400,000 to $250,000 for excessive force and battery claims against defendant police officers who choked the plaintiff, slammed her against the wall, threw her to the ground, and struck her while she was defenseless on the floor. Included in the $250,000 award were damages for psychological injuries she suffered at that time of the incident. The plaintiff had injuries to her head, her right forehead, the lower part of her mandible, the area behind her left ear, her left shoulder, her hand, her left elbow, and her spine, and suffered from two hematomas on her hand, which were characterized as "large" by a treating paramedic. *Id.* at 183. Furthermore, the plaintiff was choked so aggressively that she was unable to breath and temporarily lost vision. *Id.* at 183–84. Although the Second Circuit noted that her injuries were "severe," they found that the plaintiff did not suffer any permanent injuries. However, the Second Circuit considered the "psychological injuries" in light of the "traumatic nature of the attack" and the size of her attacker. *Id.* at 184.

In *Blissett v. Coughlin,* 66 F.3d 531 (2d Cir.1995), the Second Circuit affirmed a jury award of $75,000 for use of excessive force by prison guards. While the prisoner plaintiff was handcuffed, the defendants hit the plaintiff repeatedly with their hands and a baton and kicked him while he was lying on the floor. *Id.* at 533–347. As a result, the plaintiff drew blood, and the circulation in his hands were cut off from his handcuffs. The plaintiff eventually lost consciousness after being choked. The

plaintiff did not sustain any permanent injuries, but suffered from considerable emotional distress. *Id.* at 536. The award for all of the physical and psychological injuries was the total sum of $75,000. *Id.* at 535.

In *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir.1992), the Second Circuit affirmed a jury award of $216,000 for excessive force by police officers who struck the plaintiff in the cheekbone with a flashlight or other blunt object, resulting in "serious and painful injuries that required surgery under general anesthesia" and left the side of his face permanently numb. *Id.* at 366.

In *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir.1988), the plaintiff who, after being arrested and handcuffed, was struck in the face repeatedly and dragged across the floor by his throat while he was bleeding. *Id.* at 10. The plaintiff suffered a fractured nose, lacerations to his forehead and eyebrow, and tenderness in his throat, but he did not suffer from any permanent injuries. *Id.* at 10, 13. The Second Circuit affirmed a jury award of $80,000 in compensatory damages. *Id.*

When asked about the injuries he sustained from the incident, Hightower testified:

> **MR. HIGHTOWER: An IV was put into my arm. I was taken in the ambulance to Nassau County medical center, to the emergency room.**
>
> **MR. OFODILE: What happened when you got to the hospital?**
>
> **MR. HIGHTOWER: The doctors looked at me, examined me. A lot of tests were done, x-rays. I really, really can't recall everything right now.**
>
> **MR. OFODILE: Well, how long were you in the hospital?**

> **MR. HIGHTOWER: I don't even remember. I believe I came back that same night.**

Tr. at 392.*

In arguing that the award of $150,000 for physical injuries should remain undisturbed, Hightower states that "his medical records showed acute fracture or dislocation of the lumbosacral spine." Plf. Memorandum in Opposition at p. 16–17. However, the medical record that cites to an acute fracture is dated October 3, 2001, nearly three years after the incident. The medical record says nothing about causation and does not relate this fracture to the October 20, 1998 noon incident. Nor did any doctor testify that this fracture came from the incident. Based on the review of the plaintiff's testimony and the medical evidence or rather, the lack of medical evidence, such a fracture cited by plaintiff's counsel, if any, was not linked to October 20, 1998, noon incident.

The medical evidence introduced at trial reveal that the plaintiff's physical injuries from the altercation on October 20, 1998 at noon were bruises and contusions, and were solely soft tissue injuries without any permanency. In addition, the Court notes that the Nassau County Correctional Facility Medical/Surgical Transfer Form, dated October 20, 1998, reported the injury was "blood from [his] mouth [and] swollen lips." Plf. Ex. 44. On the same day, the Nassau County Medical Center noted that Hightower stated that he was beaten and did not know whether he lost consciousness. The Medical Center further described the plaintiff as being "alert" and noted that he had a "swollen upper lip, contusion, ... pain [in his] lumbar spine...." Plf. Ex. 44. The Medical Center on October 20, 1998 concluded that he was "fit for confinement." Progress notes,

---

* Tr. refers to the trial transcript.

dated October 23, 1998, from the Medical Center reveal that Hightower did not suffer from any fractures. The Medical Center again noted, as they did on the day he was brought in on October 20, that he was "fit for confinement." Plf. Ex. 44. In addition, a "Report of Injury to an Inmate" filed by the Nassau County Sheriff's Department, dated October 22, 1998, states that the plaintiff "sustained an injury to the left side of his face" and that "his lip appears to be swollen and cut."

None of the medical reports show that the plaintiff had any fractures or permanent injuries from the October 20, 1998, noon incident. In addition, the medical reports indicate that the plaintiff was "alert" and that his injuries were not so severe that he was unable to return to the Nassau County jail the same night that he was examined.

In addition, with regard to the $65,000 damages for emotional distress, although Hightower testified that he was on medication for anxiety and depression following the incident, no doctor or therapist testified at the trial to substantiate the extent or the severity of his emotional distress.

Accordingly, based on the soft tissue injuries, consisting of bruises and contusions; the failure to supply any physician testimony; and the non-permanent injuries sustained by the plaintiff as a result of the October 20, 1998, noon incident, the award for physical injuries should be reduced from $150,000 to $65,000. Also, the award for emotional distress should be reduced from $65,000 to $35,0000. The Court finds that the jury award for both physical injuries and emotional distress shock the conscience of the Court and are therefore reduced as set forth above. There will be a new trial on damages, unless the plaintiff agrees to the reduction of physical injuries to $65,000 and the reduction to $35,000 for his emotional distress. If this remittitur is accepted, the plaintiff would be entitled to the total sum of $100,000 in compensatory damages; and the sum of $65,000 in punitive damages.

## C. The Plaintiff's Motion for Attorney's Fees and Costs

A prevailing plaintiff in an action under 42 U.S.C. § 1983 is entitled to an award of attorneys fees and costs pursuant to 42 U.S.C. § 1988. A plaintiff who is successful on at least one or more of his Section 1983 claims is entitled to such awards. The question of whether a plaintiff is a "prevailing party" was clearly described in *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir.1998), as follows:

> For a plaintiff to be considered a "prevailing party," and thus eligible for an award of fees, he need not have succeeded on "the central issue" in the case, *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 790–91, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989), and need not have "obtain[ed] the primary relief sought," *Carroll v. Blinken*, 42 F.3d 122, 130 (2d Cir.1994) (internal quotation marks omitted); *see LaRouche v. Kezer*, 20 F.3d at 71. It is sufficient that the plaintiff succeeded on "any significant issue in [the] litigation," *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. at 791, 109 S.Ct. at 1493.

The Supreme Court set forth most of the rules in the determination of a prevailing party's fee in the seminal case of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In response to the "American Rule," in which each party in a lawsuit ordinarily bears his own attorneys fees unless there is a contractual provision or an express statutory authorization, Congress enacted the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988 ("Section 1988"). This stat-

ute authorized the district courts to award a reasonable attorneys' fee to prevailing parties in civil rights litigation. In *Hensley,* the Court stated that "the amount of the fee ... must be determined on the facts of each case." *Id.* at 429, 103 S.Ct. 1933.

Two important factors in the determination of a "reasonable" fee are the number of hours reasonably expended multiplied by a "reasonable" hourly rate. In this regard, in *Hensley* the Court stated:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Id.* at 433, 103 S.Ct. 1933.

Further, the Court stated that the district court should exclude from this initial fee calculation the hours that were not "reasonably expended," as follows:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976)[ 1976 U.S.C.C.A.N. at pp. 5908, 5913]. Cases may be overstaffed, and the skill and experience of lawyers vary widely. *Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary,* just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not

properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Id.* at 434, 103 S.Ct. 1933. (additional emphasis supplied)

However, the computation of reasonable hours multiplied by a reasonable rate "does not end the inquiry." *Id.* There are other factors for the district court to consider. An important factor is the "results obtained." *Id.* This factor is also discussed in *Hensley* as follows:

> This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 434, 103 S.Ct. 1933.

This partial success factor was further explained in *Hensley* and refined in subsequent Second Circuit cases. In *Hensley* it was explained:

> In some cases, a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case— counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." *Davis v. County of Los Angeles,* 8 E.P.D. at 5049. The congressional intent to limit awards to prevail-

ing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 434–35, 103 S.Ct. 1933.

█ In its determination of the compensation of the prevailing party attorney in regard to a partial success, the district court "may attempt to identify specific hours that should be eliminated or it may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933.

Finally, the Supreme Court in *Hensley* stated that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to the hours worked … and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims" *Id.* at 437, 103 S.Ct. 1933.

█ Summarizing the factors that the Court must now address in its determination of the proper prevailing attorneys' fee are as follows:

1. **The reasonable hourly rate for all the applicant attorneys.**

2. **The hours that were reasonably expended so as to be entitled to compensation.**

3. **Whether the prevailing attorney maintained contemporaneous billing time records so as to enable the Court to make a fair and proper determination.**

4. **Whether there was full or partial success.**

5. **The number of hours reasonably related to the successful litigation.**

The Court further notes that it must make these determinations with regard to three attorneys who represented the plaintiff in this case (1) Anthony Ofodile, Esq., the trial attorney, (2) Chidi Eze, Esq., referred to as the "associate attorney of record" for the plaintiff, and (3) William J. Robedee, Esq., a prior attorney for the plaintiff.

In this case, the attorney for the defendants concedes that Hightower is a prevailing party. However, defense counsel concludes that "his fee application is riddled with errors, particularly, unsupported billing, over-billing, billing for unsuccessful claims and for an associates' time which was unwarranted." Dft's Memorandum in Opposition at p. 2.

Initially, the Court finds that the plaintiff Ennis Hightower is a prevailing party and is entitled to an award of his reasonable attorneys fees under 42 U.S.C. § 1988. Further, the Court notes that this was a fairly routine Section 1983—battery excessive force claim. It presented no complex issues, and no innovative legal or evidentiary issues. It was a garden-variety inmate excessive force claim.

### 1. The Claims for Attorneys' Fees and Costs

The hourly rates requested by the plaintiff's counsel are as follows: (1) for Anthony Ofodile, Esq., who represented the plaintiff prior to the trial and who tried the case, the rate of $300.00 per hour; (2) for Chidi Eze, Esq., who refers to himself as "associate attorney of record" and who assisted Mr. Ofodile at the trial, the rate of $150.00 per hour; and (3) for William J. Robedee, Esq., who was the prior attorney for the plaintiff, the rate of $200.00 per hour. The counsel for the plaintiff state that they have expended 492 hours of billable time and 78 travel hours for Mr. Ofodile as trial counsel, 197 hours of billable time, 49 travel hours by Chidi Eze who assisted Mr. Ofodile in the preparation and trial, and 48.5 hours by prior attorney Robedee.

### 2. As to the Reasonable Hourly Rates and Reasonable Hours Expended

#### a. *As to Anthony Ofodile, Esq.*

█ In making the initial lodestar calculation, the rate to be used must be the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d. Cir.1997) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). In 1998, the Second Circuit held that rates of $200 for partners, $135 for associates, and $50 for paralegals are reasonable rates for legal services in the Eastern District. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d. Cir.1998). *See also Luciano*, 109 F.3d at 111–112 (collecting cases); *Association for Retarded Citizens v. Thorne*, 68 F.3d 547, 554 (2d Cir.1995); *Cruz v. Local Union No. 3, Int'l. Brotherhood of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994); *Irish v. City of New York*, 2004 WL 444544 (S.D.N.Y.2004) ($250 per hour). The Court will apply the rates prevailing in the Eastern District community for similar services by lawyers of reasonably comparable skill, experience and reputation in making the initial lodestar calculation. *Polk v. New York State Dep't of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983) ("normally a district court awarding attorney's fees under Section 1983, will consider the prevailing rates in the district in which the court sits").

Both Mr. Ofodile and Mr. Eze prepared the case for trial, and were present in the courtroom. As stated above, however, this was a garden-variety Section 1983 excessive force case. Given that the case involved no complex issues of law or novel evidentiary issues, with moderate documentary evidence, the Court finds that, at most, the trial of the plaintiff's claims required the services of one trial counsel and one associate. Accordingly, the Court will apply a trial counsel rate to the hours submitted by Mr. Ofodile, and an associate rate to the hours submitted by Mr. Eze.

█ Following the rule set forth in *Savino*, some Eastern District Courts have applied this standard. *See Fink v. City of New York*, 154 F.Supp.2d 403, 407 (E.D.N.Y.2001) (partners $200.00 to $250.00 and associates $100.00 to $200.00); *Schwartz v. Chan*, 142 F.Supp.2d 325 (E.D.N.Y.2001) ($175.00 per hour for a sole partner). *Fernandez v. North Shore Orthopedic Surgery & Sports Medicine*, 2000 WL 130637 *8 (E.D.N.Y.2000) ($225.00 per hour for partners and $100.00 per hour for associates); *Cush–Crawford v. Adchem Corp.*, 94 F.Supp.2d 294, 303 (E.D.N.Y. 2000) aff'd 271 F.3d 352 (2d Cir.2001) ($200.00 for partners and $135.00 for associates); *Greenidge v. Mundo Shipping Corp.*, 60 F.Supp.2d 10, 13 (E.D.N.Y.1999) ($225.00 per hour for a senior partner and $150.00 per hour for her associate).

Accordingly, after considering all the factors in *Hensley,* the facts and circumstances of this case and the experience and ability of Anthony Ofodile the Court fixes his hourly rate of compensation at $250.00.

 Having determined the reasonable hourly rate for Mr. Ofodile, the Court now turns to the question of how many hours were reasonably expended by him. The standard in this regard was stated in *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998):

> The district court must thus examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts.... In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties. *DiFilippo v. Morizio,* 759 F.2d 231, 235–36 (2d Cir.1985); *see, e.g. Luciano v. Olsten Corp.,* 109 F.3d 111, 116 (2d Cir.1997); *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992). If the court determines that certain claimed hours are "excessive, redundant, or otherwise unnecessary," *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40, the court should exclude those hours in its calculation of the lodestar.

 For an accurate determination of the hours reasonably expended it is necessary for the Court to examine contemporaneous billing records, time sheets or other documented, authentic and reliable time records. *See Hensley* at 434, 103 S.Ct. 1933 ("Hours that are not properly billed to one's client also are not billed to one's adversary").

 The time records submitted by Mr. Ofodile as annexed to his affidavit, appear to be a review or compilation of the work he did. They do not appear to be contemporaneous records. In addition, the Court notes that the handwritten summaries on the bottom of each page of Exhibit 1 to Mr. Ofodile's affidavit are very difficult to comprehend. In order to make sure that the Court fully understands the extent of Mr. Ofodile's hourly claim, the Court had a telephone conference call to clarify the issue. While the compilations submitted by Mr. Ofodile are certainly permitted in this type of application, it appears, with reasonable certainty, that the time records submitted by him were compiled for the purposes of this application. However, the Court accepts the representation by Mr. Ofodile in his Reply Memorandum of Law that "these records are kept on the computer and were copies of the original records".

Defense counsel contends that the records are "so riddled with grossly inflated 'entries' that it is virtually impossible to analyze each one." The Court finds that the records submitted by Mr. Ofodile reveal excessive, redundant and unnecessary hours which cannot be included in the fee allocation. For example, Mr. Ofodile asks for 6 hours to read the 50H transcript; to draft interrogatories and requests for production—7 hours; a letter to attorney Horn regarding discovery interrogatories—10 hours; a letter to Horn re: failure to comply with discovery—1 hour; a letter to Magistrate Judge Lindsay—2 hours; reviewing defendants' responses to plaintiff's second request for production of documents, etc.—6 hours; to review and read a long letter from the plaintiff—1 hour and 20 minutes; preparing for depositions—26 hours and 30 minutes; reading and summarizing deposition testimony—13

hours; trial preparation—approximately 57 hours; preparation during trial—54 hours (so that his pretrial and during trial preparation was a total of 111 hours); research and writing of post trial motions—28 hours.

■ In this regard, when there is a fee application containing excessive hours, it is within the discretion of the district court to make percentage reductions. "Courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. These courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." *NYSARC v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983).

Following this procedure, courts in this Circuit and elsewhere have made percentage cuts of fee awards where there was excessive billing. *See Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir.1980) (22% reduction); *S.E.C. v. Goren,* 272 F.Supp 2d 202, 213 (E.D.N.Y.2003) (hours reduced by 30%); *Elliot v. Board of Education of City of Rochester,* 295 F.Supp.2d 282 (W.D.N.Y.2003) (10% reduction in hours); *Sabatini v. Corning–Painted Post Area School Dist.,* 190 F.Supp.2d 509, 522 (W.D.N.Y.2001) (hours for total non-travel items reduced by 15%).

In sum, after reviewing the papers submitted on the fee application and considering the nature of the case, plaintiff's attorney's expertise and the time reasonably necessary to prosecute the action, the Court is of the view that a portion of the time spent by Mr. Ofodile was excessive, redundant and unnecessary. Under these circumstances, a district court has the discretion to deduct a reasonable percentage of the number of hours claimed to effect the necessary reduction. In this regard, Courts need not evaluate and rule on each and every entry. A reduction of 20% of the non-travel hours claimed by Mr. Ofodile is warranted.

**b. As to Chidi Eze, Esq.**

■ The Court has reviewed the affidavit of Chidi Eze, Esq. in support of his fee application. He is an attorney admitted to practice in the State of New York. However, he fails to state when he was admitted or whether he was admitted in the Eastern District of New York. Defense counsel in his Memorandum in Opposition states that Mr. Eze is "not admitted in this district or any federal court for that matter, and has only been a member of the bar for a short time." From his affidavit, the Court cannot discern whether these assertions are true. Accordingly, considering all the factors in *Hensley,* the facts and circumstances of the case and the limited experience of Mr. Eze, the Court fixes his compensation at the rate of $125.00 per hour.

■ Defense counsel further contends that Mr. Eze "did nothing at the trial, did not ask a single question or make a single argument" and "this case is not of so complex (sic) that it required two (2) lawyers to prepare and try the case." The issue of a "second seated" attorney at a trial was reviewed in *New York State Assoc. For Retarded Children Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983) when the use of multiple counsel was discussed.

In assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion. Under section 1988, prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist. *See Seigal v. Merrick,* 619 F.2d 160, 164 (2d Cir.1980). Nor are counsel forbidden from receiving fees for background research. *See Ross v. Saltmarsh, supra,* 521 F.Supp. at 757–59. Of course, a trial judge may decline to compensate hours spent by

collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

█ The Court cannot say that in this case, an associate counsel in or out of court assisting counsel in chief was unnecessary. Therefore, the Court will allow a fee for participation by Mr. Eze. A review of his claimed hours is now in order. In his affidavit, Mr. Eze asserts that his time records as an "Associate Attorney of Record" were kept "contemporaneously with the services performed when they were performed." In reviewing his time records the Court finds that the number of hours claimed is excessive and especially redundant. Most of the same work was done by counsel in chief Ofodile.

In particular, the following entries are excessive and partially redundant: Reading and reviewing deposition transcripts—24 hours; reading and reviewing entire Hightower file—12 hours; preparing for trial—(redundant in view of the above assignments) a total of 27½ hours; trial preparation during trial—30½ hours, a total of 58 hours for trial preparation; and post trial research and writing—24 hours. Eze seeks a total of:

| | | |
|---|---|---|
| 197.20 hours @ $150.00 | = | $29,580 |
| Travel 46 hours @ $75.00 | = | 3,450 |
| Total | | $33,030 |

Again, after reviewing all of the papers and the legal background of the applicant, the Court is of the view that a good portion of the time spent by Mr. Eze was excessive, redundant and unnecessary. Under these circumstances, a reduction of 30% of the non-travel hours claimed by Eze is warranted.

### c. As to William J. Robedee, Esq.

█ Counselor Robedee is admitted to practice in both New York and New Jer-

sey. He does not say when he was admitted, although he was an Assistant District Attorney in Kings County for two years and engaged in the private practice of law for six months at the time of his retention. He stated that he had three years of experience in 1999 and requests a fee of $200.00 per hour. When he agreed to represent the plaintiff, he had just started his own practice. The Court notes that in the plaintiff's Memorandum of Law, Mr. Ofodile states that he was asked to take over the case because of Robedee's inexperience in this type of litigation. Robedee states that he expended 48.5 hours. Robedee's application is unaccompanied by any contemporaneous time records.

In response, defense counsel raises the issue of the lack of contemporaneous time records. In addition, counsel states that the mathematical calculation of 48.5 hours is incorrect. The Court computed the claimed hours on a calculator and finds that Robedee's figures do add up to his claimed 48.5 hours. However, the Court finds that the 20 hours claimed for investigation may very well have been involved in the plaintiffs criminal matter, in which Robedee also represented him. The Court therefore rejects the 20 hours investigation claim and allows the remaining 28.5 hours. However, no time records of any kind have been produced by Robedee and, for that reason, the Court further reduces the remaining claimed hours by 50% to 14.25 hours.

█ As to the lodestar hourly rate, with the limited information available to the Court and the fact that Robedee had just started his law practice, the Court finds that an hourly rate of $150.00 is appropriate.

### d. As to Travel Time

█ Courts in this Circuit customarily reimburse attorneys for travel time at fifty

percent of their hourly rate. *See, e.g., Wilder v. Bernstein,* 975 F.Supp. 276, 283 (S.D.N.Y.1997); *Clark v. Phillips,* 965 F.Supp. 331, 336 (N.D.N.Y.1997); *DeCarlo v. Perales,* 963 F.Supp. 181, 184 (N.D.N.Y. 1997); *Davis v. City of New Rochelle,* 156 F.R.D. 549, 559 (S.D.N.Y.1994); *Loper v. New York City Police Dep't,* 853 F.Supp. 716, 720 (S.D.N.Y.1994); *In Re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1296, 1321–22, 1349 (E.D.N.Y.1985), *aff'd in part, rev'd in part,* 818 F.2d 226 (2d Cir.1987). This Court will follow that custom and in this case the plaintiff's counsel will be awarded fifty percent of their hourly rate for travel time.

### e. As to Unsuccessful Claims

As stated in *Hensley,* the "results obtained" factor "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief" 103 S.Ct. at 1940. In dealing in partially successful claims, two questions must be presented. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 1940. The *Hensley* Court then went on to explain in more detail the "related claims" concept.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as

a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley,* 461 U.S. at 434–37, 103 S.Ct. 1933.

Defense counsel contends that the plaintiff's unsuccessful claims were not intertwined with the successful claims. He argues for a reduction in the fee on the ground that the unsuccessful claims "arose out of completely separate and unrelated incidents involving completely different individuals." On the other hand, plaintiff's counsel contends that the failed October 20, 1998 at 10:00 a.m. excessive force claim was inextricably linked to the later October 20, 1998, 12 noon incident. The plaintiff's theory was that he, as a pre-trial detainee had a fight with Corrections Officers Kennedy and Hartung at 10:00 a.m. and was assaulted on the same day at 12 noon in retaliation for the earlier incident in which he was accused of assaulting the correction officers involved. The Court agrees that these two Section 1983 battery claims were related and inextricably linked.

However, the Court also finds that the November 30, 1998 alleged battery by unknown correction officers is unrelated to the two October 20, 1998 incidents. Therefore, the lodestar must be reduced to the extent that the plaintiff was unsuccessful on a claim that was distinct from those in which the plaintiff prevailed. For the time spent on the unsuccessful November 10, 1998 claim, the Court finds that a 20% reduction in the fees of all counsel is required.

In addition, the Court further finds that the plaintiff's degree of success on the interrelated successful and unsuccessful claims of October 20, 1998, does not warrant a reduction on the fee award for those claims.

### f. As to the Plaintiff's Original Time Records

In his Memorandum in Opposition, defense counsel requests that the plaintiff's counsel produce the original contemporaneous time records involving the services rendered in this case. As stated above, the Court accepts the representation by attorney Anthony Ofodile that the contemporaneous time records are in his computer. The defendants' request to produce the records is therefore denied.

### g. As to Costs

■ The plaintiff is entitled, under 42 U.S.C. § 1988, to reimbursement for the reasonable costs incurred in pursuing the litigation, although payment is not permitted for items which constitute routine office overhead. *See LeBlanc–Sternberg v. Fletcher,* 143 F.3d at 763. The Second Circuit has held that reasonable identifiable out-of-pocket disbursements, which are ordinarily charged to clients, are recoverable. *See United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989); *see also Kuzma v. Internal Revenue Service,* 821 F.2d 930, 933–34 (2d Cir.1987) (providing a nonexclusive list of recoverable costs including photocopying, travel and telephone costs).

■ Defense counsel requests that the plaintiff's counsel is entitled to such an award only for costs supported by invoices. The Court agrees. The invoices annexed to the affidavit in support of this application amount to the total sum of $2,934.31, which will be the sum awarded for costs. *See* Fed.R.Civ.P. 54(d)(1).

## II. CONCLUSION

The Court now recalculates the fees to be awarded to all three plaintiffs' counsel.

| | | |
|---|---|---|
| Anthony Ofodile—393.60 hours @ $250 per hour | = | $ 98,400.00 |
| Travel 78 hours @ $125 per hour | = | 9,750.00 |
| Total | | $108,150.00 |
| Less 20% reduction | | 21,630.00 |
| Net Fee | | $ 86,520.00 |
| | | |
| Chidi Eze—138.04 hours @ $125 per hour | = | $ 17,237.50 |
| Travel 49 hours @ $62.50 per hour | = | $ 3,062.50 |
| | | 20,300.00 |
| Less 20% reduction | | 4,060.00 |
| Net Fee | | $ 16,240.00 |
| | | |
| William S. Robedee—14.25 hours @ $150 per hour | = | $ 2,137.50 |
| Less 20% reduction | | 427.50 |
| Net Fee | | $ 1,710.00 |

With regard to the remittitur of damages, the plaintiff may file with the Clerk of the Court on or before July 23, 2004, an acceptance of remittitur damages to the amount of $100,000. In the event that the plaintiff does not file an acceptance of the remittitur on or before July 23, 2004, a new trial solely on the issue of compensatory damages will commence on a date to be set by the Court.

If there is a consent to the remittitur, the Clerk is directed to enter judgment in favor of the plaintiff Ennis Hightower against the defendants Correction Officer Matthew Anderson, Correction Officer John Lagormarsino and Cpl. Gary McGuinness for compensatory damages in the sum of $100,000, and for punitive damages against the defendant Matthew Anderson in the sum of $15,000, for puni-

tive damages against the defendant John Lagormarsino in the sum of $15,000, for punitive damages against the defendant Gary McGuinness in the sum of $35,000, together with total attorneys fees of $104,470 and costs in the sum of $2,934.31.

**SO ORDERED.**